## KUPFERSMITH v. ISAAC A. HOPPER & SON, Inc.

(Supreme Court, Appellate Division, First Department. November 22, 1907.)

1. MASTER AND SERVANT—INJURY TO SERVANT—EVIDENCE.

In an action for the death of a servant while working on a scaffolding on the outside of a wall laying a projecting cornice, and caused by the cornice falling on and breaking the scaffold, and throwing him to the ground, evidence that another wall of the building was improperly constructed *held* inadmissible to prove faulty construction of the fallen wall.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 919.]

2. APPEAL—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Where the south wall of a brick building was damaged, and then repaired and approved by the building inspector, and later the west wall fell, evidence showing that the building inspector was a member of de-

fendant corporation which owned the building *held* prejudicial to defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4153.]

Appeal from Trial Term.

Action by Adela Kupfersmith, administratrix of Charles Kupfersmith, against Isaac A. Hopper & Son, Incorporated. From a judgment for plaintiff, and an order denying motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

J. S. L'Amoreaux (Daniel E. Wing, on the brief), for appellant.
Stephen C. Baldwin, for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of Charles Kupfersmith. The decedent was a bricklayer by trade, and entered the employ of the defendant about 1 o'clock in the afternoon on the 30th day of April, 1903, and within three hours thereafter received the injuries which resulted in his death. The defendant is a corporation, and its business is that of a building contractor. It was engaged in constructing the Flattau Building, at the southeast corner of Thirteenth street and University Place, in the borough of Manhattan, New York. The building was of steel construction, with exterior walls 16 inches in thickness, constructed of brick, except the outer 4 inches, which was of stone. The walls had been constructed to an elevation a little above the second story about a week before the day of the accident and were ready for a cornice consisting of two layers of terra cotta work. The lower course of terra cotta had been laid before the decedent commenced work. It had a bearing of 7½ inches on the wall, and projected an equal distance beyond the wall, and the wall back of the layer of terra cotta had been constructed of brick and mortar up to the level of the upper surface of that layer of terra cotta. The upper course of the terra cotta work was to be constructed of brick blocks, weighing from 40 to 60 pounds, from 16 to 18 inches in length, from 10 to 12 inches in thickness, and about the same width. They were to be placed on the wall at right angles; one end projecting out over the lower layer of terra cotta, and the other resting upon it. The blocks were hollow lengthwise, and also had holes through them crosswise. Part of the upper layer of terra cotta had been constructed upon the Thirteenth street wall, and four blocks had been set on the University Place wall, extending from Thirteenth street southerly. Along the outer side of the wall on University Place a scaffold extended, consisting of a ladder 18 feet in length, with boards resting on the rounds at the south, and to the north of boards extending from the ladder to timbers projecting from the building. In constructing the terra cotta work, two bricklayers worked together; one standing on the scaffolding to align and point the work, and the other on the inside to put the blocks upon the wall and secure them in place. The defendant's foreman directed one Donaldson and the decedent to proceed with the construction of the terra cotta work, and, according to the testimony introduced in behalf of the plaintiff, the decedent was spe-

cifically directed to work upon the scaffold and Donaldson inside. The decedent climbed over the wall from the second story onto the scaffold, and they continued the work southerly along University Place from the point to which it had been finished near the Thirteenth street line. Two other bricklayers were similarly engaged in laying the second tier of the terra cotta work from the southerly end of that wall northerly, to meet Donaldson and the decedent.

The testimony introduced in behalf of the plaintiff is not accurate with respect to the length of the blocks of terra cotta forming the second tier, or their bearing upon the wall. It tends to show that they were, as already observed, from 16 to 18 inches in length, and that from 5½ to 8 inches of the inner end rested directly over the wall and the rest projected beyond. When the blocks were installed in place on the wall, cement mortar was plastered on the underside, which would tend to some extent to hold them from tipping over the outer edge; but it is evident that, if blocks of this weight and length were only supported 5½ inches by the wall proper and projected beyond 10½ inches, the center of gravity would be so far outside of the wall that they would likely fall and take the lower layer of the terra cotta with them, unless it was held in place very securely. The evidence of the defendant on that subject is the more probable. It is to the effect that the blocks were 20 inches in length and that they had a bearing on the wall of half their length. With the terra cotta blocks in place, the wall was so high above where the decedent and Donaldson were standing that each could only see the top of the other's head. After Donaldson put two or three blocks in place on the wall, he would run a small iron pipe or rod through the hole therein lengthwise of the wall, and fasten a wire from an eighth to a sixteenth of an inch in diameter around the iron pipe or rod and draw the same tightly down over the inner edge of the wall and fasten it to a ten-penny nail from 3 to 3¼ inches in length, driving it into the brick wall on the inside wall down where the mortar had set, for the purpose of holding the blocks in place and preventing their tipping over into the street. According to the testimony of Donaldson, this was the manner in which he was directed by the foreman to do the work.

After they had thus set in place from 12 to 15 blocks, all of the blocks they had laid and some that had been laid previously bulged out in a funnel shape and fell upon the scaffold, breaking and carrying the planks and decedent down with them. The evidence does not show with any degree of certainty the precise cause of the accident. There is no express evidence that Donaldson was negligent either in placing the blocks, inserting the iron pipe or rod, or fastening the wire thereto, or inserting the nails in the wall and attaching the wire; nor, on the other hand, is there any evidence that any wire broke or nail gave way, or that any of the materials furnished by the defendant for the use of its employés was defective. The plaintiff claims that the method employed by the defendant in anchoring the blocks upon the wall temporarily until the wall should be filled in behind and set, which would hold them in place securely, was unsafe, and gave evidence tending to show that the usual method of anchoring such blocks was by an

iron anchor made for the purpose, projecting from the hole in the block back upon the wall, to be held in place by filling in upon it the material of which the inner part of wall was to be constructed. The defendant, however, called numerous witnesses, who testified that the method adopted by it was in common use, was adequate for the purpose, and more safe than using iron anchors. If the accident was caused owing to the failure of Donaldson to perform his duties properly, of course, defendant would not be liable; but, if the nails and wire and manner of fastening the same were not suitable or proper, then the jury might have found that to be a contributory cause, for which defendant would be liable.

It is also claimed that the defendant was negligent in not closely following up the work which the decedent and Donaldson were doing, by having the wall filled in behind the row of terra cotta blocks which they were setting. The evidence indicates that this should have been done, and the foreman of the defendant claims that he directed another employé to do it and saw him doing it. Other evidence in the case, however, tends to show that the work was not done, and presented a question of fact as to whether the foreman ordered it done. The evidence shows that the decedent and Donaldson were instructed by the foreman to lay the blocks as rapidly as possible, and that he informed them that he would send bricklayers to fill in the wall behind when they had sufficiently advanced with the work to require it. It does not appear that the decedent knew that this had not been done, or that the work had been so far advanced that it should have been done. If the failure to fill in the wall behind these blocks was the cause of the accident, then, perhaps, the defendant would be liable under the employer's liability act (Laws 1902, p. 1748, c. 600), for the failure of its foreman to direct that it be done; and so, also, if such negligence concurred with the negligence of a co-employé in causing the accident. On this branch of the case probably a question of fact was presented for the consideration of the jury. I am of opinion, however, that an error was committed in the reception of evidence which requires a new trial.

The architect of the building was called as a witness for the defendant. He testified to the manner in which the building was constructed and that the plans and specifications were followed. On cross-examination he was asked by counsel for the plaintiff whether, representing the owner of the building, he found that the south wall was built according to the plan. This was objected to as immaterial and not involved in the issue. The objection was overruled, counsel for defendant excepted, and the witness answered that it was not. It is to be borne in mind that the accident occurred on the west wall of the building, and was in no manner connected with or caused by any condition of the south wall. The witness was then further asked, on cross-examination, whether it was not true "that the south wall of that building in hurry construction was such that it was all out of alignment, and that a workman was put upon the job to cut the bricks down, in order, if possible, to assist the eye in the belief that there was a straight line there?" This was objected to as incompetent, improper, and not the subject of cross-examination. The objection was over-

ruled, counsel for defendant excepted, and the witness answered, "I cannot answer that question the way it is put, sir." The witness was then asked, "What was there wrong about the south wall?" to which counsel for defendant objected upon the same grounds, stating that he desired the same objection to each question relating to the construction of the south wall, and that he desired an exception thereto. This suggestion was apparently acquiesced in. The witness answered:

"The south wall, during a windstorm, was blown out of plumb during one night's storm, and the building department put a survey on the building. The survey was made, and the thing was rectified in accordance with their demands and to their satisfaction."

The witness was then asked how it was rectified, and he replied that portions of it were taken down, "as it was bad, and those portions which you saw or spoke of being cut off were portions they did not object to, and were cut off simply to make an alignment to the front." Counsel for the plaintiff then pointedly asked if the witness intended to testify that the building department did not object to the alignment being made more perfect by means of chopping off the bricks on the side, and he answered in the affirmative. Counsel for the plaintiff then showed that the superintendent of buildings was Isaac A. Hopper, after whom the defendant corporation was named, and who appears to have been the party principally interested therein.

This evidence was prejudicial, as it not only showed negligence on the part of the defendant in the construction of part of the building, which had no connection with the accident and was calculated to lead the jury to infer that the entire work was constructed hastily and negligently, but also tended, and evidently was intended, to prejudice the jury against the defendant, upon the theory that Isaac A. Hopper, as superintendent of buildings, failed to perform his official duty with respect to contract business in which he was directly personally interested.

On account of error in the reception of this evidence, the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur; INGRAHAM, J., in result.